UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES HENRY ARNOLD ROSEBERRY, :
                                :CIVIL ACTION NO. 3:16-CV-371
          Plaintiff,            :
                                :(JUDGE CONABOY)
          v.                    :
                                :
CAROLYN W. COLVIN,              :
Acting Commissioner of          :
Social Security,                :
                                :
          Defendant.            :
                                :

---

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  (Doc. 1.)  He alleged disability beginning on January 31, 2009.  (R. 10.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Randy Riley, concluded in his October 3, 2014, decision that Plaintiff remained insured through March 31, 2014, and his severe impairments of degenerative disc disease, obesity, and depression did not alone or in combination meet or equal the listings.  (R. 12, 13.)  He also found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain nonexertional limitations and that, although he was unable to do past relevant work, he was capable of performing jobs that existed in significant numbers in the national economy.  (R. 19.)  ALJ Riley therefore found Plaintiff was not disabled.  (*Id.*)

With this action, Plaintiff asserts that benefits should be

awarded or the Acting Commissioner's decision should be remanded for the following reasons: 1) the ALJ erred in his evaluation of Plaintiff's severe impairments; 2) the ALJ erred in his assessment of Plaintiff's credibility and his exertional and non-exertional limitations; and 3) the ALJ did not properly consider favorable and relevant medical and vocational evidence.  (Doc. 12 at 5-6.)  After careful review of the record and the parties' filings, I conclude this appeal is properly denied.

## I. Background

### A. *Procedural Background*

Plaintiff protectively filed for DIB on December 12, 2012. (R. 10.)  The claims were initially denied on February 5, 2013, and Plaintiff filed a request for a hearing before an ALJ on April 1, 2013.  (*Id.*)

ALJ Riley held a hearing on September 18, 2014.  (*Id.*) Plaintiff, who was represented by an attorney, testified as did Vocational Expert ("VE") Michael J. Kibler.  (*Id.*)  As noted above, the ALJ issued his unfavorable decision on October 3, 2014, finding that Plaintiff was not disabled under the Social Security Act during the relevant time period.  (R. 19.)

Plaintiff's request for review of the ALJ's decision was dated October 31, 2014.  (R. 1.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 30, 2015.  (R. 1-4.)  In doing so, the ALJ's decision became the decision of the

Acting Commissioner.  (R. 1.)

On March 1, 2016, Plaintiff filed his action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant filed her answer and the Social Security Administration transcript on May 4, 2016.  (Docs. 8, 9.)  Plaintiff filed his supporting brief on June 27, 2016.  (Doc. 12.)  Defendant filed her brief on July 26, 2016.  (Doc. 12.)  Plaintiff did not file a reply brief and the time for doing so has passed.  Therefore, this matter is ripe for disposition.

**B.  *Factual Background***

Plaintiff was born on September 1, 1970, and was forty-three years old on the date last insured.  (R. 18.)  He has limited education and he has past relevant work as a floor technician and palletizer.  (*Id.*)

**1.   <u>Impairment Evidence</u>**

Plaintiff began treating with Andrew Winand, M.D., on October 30, 2012, with records indicating that he continued to treat with Dr. Winand at least until February 18, 2014.  (R. 199, 446.)  At his initial visit, Plaintiff's primary complaint was diffuse pain which had been chronic "for the past 30 years."  (R. 199.)  At the time of the visit, Plaintiff was taking nothing for pain which he noted included pain in his left hip, numbness in his legs and diffuse myalgias.  (*Id.*)  He attributed the symptoms to Rocky Mountain fever which he had at the age of ten.  (*Id.*)  Dr. Winand

recorded that Plaintiff reported that his balance had been off for some time, he occasionally falls, and there was no clear etiology for this.  (R. 200.)  Dr. Winand did not report any problems found on physical examination.  (*Id.*)  He specifically noted that musculoskeletal examination showed normal alignment and mobility of the spine/ribs/pelvis, and normal gait/station with no difficulty with ambulation.  (R. 201.)  Dr. Winand's psychiatric evaluation showed that Plaintiff's judgment was intact, he was oriented to time, place and person, his memory was intact for recent and remote events, he had no depression, anxiety, agitation, or psychosis, and his affect was in the appropriate range.  (*Id.*)

Plaintiff continued to report chronic pain on his visits with Dr. Winand in November and December 2012.  (R. 202, 204, 206.) Physical examinations were normal (R. 203, 205, 207) though Dr. Winand noted at the December 11th visit that the back pain was likely musculoskeletal in etiology and a previous CAT scan of the abdomen showed moderate degenerative changes of the lumbar spine (R. 204).  At the December 21st visit, Dr. Winand noted that Plaintiff was seen for an acute visit for his back pain and that he would be referred to Wellspan Orthopedics for it.  (R. 206.)

Plaintiff was seen on January 22, 2013, for an orthopedic evaluation at Wellspan Orthopedics by a physician's assistant, Amber Thomas.  (R. 233.)  She noted that Plaintiff had "quite a significant medical history and clinical presentation" and he

4

indicated that his back/leg pain had been constant and the episodes have been occurring much more often.  (R. 233, 234.)  Ms. Thomas noted that Plaintiff had "arm and leg weakness with long track findings with positive Hoffman's reflexes in ankle clonus[,] . . . and an instability in his gait."  (R. 233.)  Physical examination also showed the following: Plaintiff was oriented but his mood/affect was depressed; he had tenderness in the cervical paraspinal region, trapezial regions, and cervical facet joints; muscle guarding was present; and his range of motion was mildly restricted.  (R. 236-37.)

A January 22, 2013, lumbar spine x-ray showed degenerative changes in the lower lumbar spine with degenerative spondylosis, facet arthropathy and disc space narrowing.  (R. 239.)  No spondylolisthesis or abnormal motion was found.  (*Id.*)

A January 29, 2013, lumbar spine MRI showed minimal disc disease without acute abnormalities.  (R. 260-61.)  A cervical spine MRI of the same date showed mild degenerative spurring at C5-6 without neural foraminal narrowing, compression of the thecal sac, or spinal canal stenosis.  (R. 258-59.)

A March 7, 2013, nerve conduction study was normal.  (R. 280.)  There was no evidence suggestive of a generalized neurogenic or myopathic process affecting the peripheral nervous system, and there was no evidence suggestive of a focal neuropathy or radiculopathy affecting the right upper and lower extremities.  (R.

280.)

On July 2, 2013, Dr. Winand noted worsening depression and a psychiatry referral.[1]  (R. 243.)  He prescribed Sertraline.  (*Id.*)

Records from Plaintiff's August 2013 visit with Dr. Winand show that Plaintiff did not fill this prescription and was still feeling depressed.  (R. 273.)  Dr. Winand noted "[a]s always, he has somewhat vague responses when asked about his medication." (*Id.*)  Plaintiff told Dr. Winand that he generally avoided crowds and gets irritable around large numbers of people.  (*Id.*)  No problems were recorded on physical examination.  (R. 275.)

In September 2013, Dr. Winand planned to try Gabapentin for neuropathic pain in the back and lower extremities and increase Sertraline for anxiety and depression.  (R. 270.)  Plaintiff complained of a burning type pain throughout his spinal cord with radiation down his legs.  (*Id.*)  Physical examination showed no spinal tenderness and normal gait, though Dr. Winand noted that Plaintiff had some difficulty getting off the exam table.  (R. 272.)

On October 28, 2013, Dr. Winand reported that Plaintiff stated the Gabapentin did not help his back pain.  (R. 264.)  No problems were noted on physical examination.  (R. 266.)

---

[1] The record contains no indication that Plaintiff was seen by a psychiatrist or psychologist for evaluation or treatment.

In December 2013, Plaintiff told Dr. Winand that Sertraline had not helped his depression. (R. 349.) Dr. Winand noted that neither Gabapentin nor Tramadol had helped Plaintiff's chronic pain in the past and narcotics were being avoided because of Plaintiff's previous history of overdose when he was in his twenties. (*Id.*) Dr. Winand noted that Plaintiff had a flat affect but was conversant and appropriate. (R. 351.) Physical examination was otherwise normal. (*Id.*)

On December 29, 2013, Plaintiff was admitted to York Hospital due to chest pain. (R. 365.) Plaintiff was dicharged the next day with a discharge diagnosis of chest pain and headache due to hypertensive urgency. (*Id.*)

On January 7, 2014, Dr. Winand's records indicate that Plaintiff complained of ongoing back pain and generalized leg weakness which Plaintiff stated went back to when he was in grade school. (R. 346.) Plaintiff also stated that he occasionally takes one Tylenol which does not help. (*Id.*) Dr. Winand noted that the cause of Plaintiff's back and neck pain was unclear because workup in the past had been unremarkable. (R. 346.) Plaintiff also complained of worsening depression. (*Id.*) Physical examination showed that Plaintiff had a normal gait but he had some difficulty getting on and off the exam table because of back pain and leg weakness. (R. 348.)

Records from Plaintiff's February 8, 2014, visit with Dr.

7

Winand are sparse but indicate that Plaintiff believed that Rocky Mountain spotted fever was causing most of his problems.  (R. 446-47.)

## 2.   Opinion Evidence

The record contains two opinions from Dr. Winand.  (R. 242, 328-32.)  On May 6, 2013, Dr. Winand opined that Plaintiff could stand and walk for about two hours in an eight-hour workday and could sit for the same period of time; he could lift and carry up to ten pounds occasionally and could lift and carry the same amount of weight frequently; he would need to shift between sitting and standing/walking at will; he would need to lie down at unpredictable times during the workday; and he would miss work on average more than three times per month due to his conditions and symptoms.  (R. 242.)

On December 3, 2013, Dr. Winand completed a Lumbar Spine Residual Functional Capacity Questionnaire.  (R. 328-32.)  Dr. Winand's diagnosis was chronic lower back pain and his prognosis was fair.  (R. 328.)  In answer to the question of whether his patient was a malingerer, Dr. Winand wrote "Unknown" in parentheses.  (*Id*.)  The positive objective signs identified were reduced range of motion in forward flexion and positive straight leg raising test at 30 degrees both right and left.[2]  (R. 329.)

_____

[2] Dr. Winand did not check the following exemplary objective signs: abnormal gait, sensory loss, reflex changes, tenderness, crepitus, swelling, muscle spasm, muscle atrophy, muscle weakness,

Dr. Winand answered "No" to the question of whether Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation, explaining that the MRI of the lumbar spine showed only minimal degenerative disc disease. (*Id.*)  The only medication side effect noted was dry mouth.  (*Id.*)  Dr. Winand noted that Plaintiff's experience of pain and other symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks.  (*Id.*) He also opined that Plaintiff could walk three blocks without needing a rest or experiencing severe pain; he could sit for forty-five minutes before needing to get up; he could stand for thirty minutes before needing to get up; in an eight-hour day he could sit for a total of about four hours and stand/walk for less than two hours; he would need to walk for ten minutes approximately every thirty minutes; he would need to shift positions at will and take unscheduled breaks several times a day for fifteen minutes; he did not need an assistive device; he could frequently lift and carry less than ten pounds, occasionally ten pounds, rarely twenty pounds, and never fifty pounds; he could occasionally twist, stoop, crouch, climb ladders and climb stairs; he would have good days and bad days; and he would likely miss more than four days per month. (R. 329-31.)  Dr. Winand noted that the earliest date the symptoms

---

impaired appetite or gastritis, weight change, and impaired sleep. (R. 329.)

identified in the questionnaire applied was October 13, 2012.  (R. 331.)

3.    **Hearing Testimony**

At the September 18, 2014, hearing, ALJ Riley reminded Plaintiff to remember back to how he was functioning up to his March 31, 2014, date last insured.  (R. 31.)  Plaintiff testified that he did not do household or yard chores, he was able to drive, he had difficulty lifting his legs, he was unable to pick things up, and he did not climb stairs because it was too hard.  (R. 33.) He said he did not remember how long he could walk or stand in one spot, he could not sit for very long before he had to get up, and he no longer helped his friend mow lawns or shovel mulch.  (R. 33-35.)   Plaintiff said his medications were not helping and his side effects included dizziness, sleepiness, and pain in his legs like numbness.  (R. 35-36.)

Plaintiff's attorney questioned him about Rocky Mountain fever and Plaintiff responded that he was told that not much could be done for it but Dr. Winand was trying to get him "in with the CDC." (R. 37.)  When questioned about his falls, Plaintiff said they occurred once or twice a week for his whole life and that Dr. Winand had recommended he use an assistive device and a chiropractor had given him a walker.  (R. 38.)  Plaintiff said he continued to used the walker once or twice a week and he also used a cane at times.  (R. 38-39.)

10

Plaintiff testified that he has problems thinking, he can only sit for fifteen or twenty minutes then has to get up because his legs go numb and hurt as do his back and neck.  (R. 41.)  He also said he has shortness of breath when he walks a lot but he has not received any treatment for the problem.  (R. 41-42.)  Plaintiff testified that he only gets an hour or two of sleep per night due to discomfort and he sometimes lies down for four to five hours during the day.  (R. 42.)  He stated that on other days he does not get up--he sleeps all day because of the pain.  (*Id.*)

Plaintiff said he can lift no more than ten pounds and he had difficulty using his left hand related to it having been broken.  (R. 43.)  He added that Dr. Winand thinks he might have carpal tunnel in both wrists but he has not been tested or treated for carpal tunnel.  (R. 43-44.)  Plaintiff added related difficulties to be numbness and using his arms to push and pull.  (R. 44.)

Plaintiff testified that he has always had a lot of problems with concentration and focus.  (R. 45.)  He said he has difficulty dealing with stress and getting along with other people.  (R. 46.)

When asked by his attorney to summarize the main reason why he was unable to do any kind of work, Plaintiff responded as follows: "Because of my functions.  I can't work, I can't walk right, I can't lift and I'm not very smart I might as well say."  (R. 47.)  In follow-up questioning, Plaintiff indicated he was in "slower classes," but he did not know if he had ever been diagnosed with a

learning disability." (*Id.*)

ALJ Riley asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience who was able to do light work, occasional stairs, balance, stoop, kneel, crouch, and crawl and could never climb ladders, and who was limited to simple, routine, repetitive tasks. (R. 49.) When asked whether this hypothetical individual could do Plaintiff's past work, the VE responded that he could not. (*Id.*) VE Byerly added that such an individual could perform the exemplary jobs of housekeeping cleaner, machine feeder, and laminating machine tender. (*Id.*) If the individual were limited to sedentary work, the VE testified that he could do the exemplary jobs of final assembler, inspector, and table worker. (R. 50.) The VE then testified that if the individual could not engage in sustained work activity on a regular continual basis for eight hours a day, five days a week for forty hours per week, he could not do either his past jobs or any other type of work. (*Id.*)

**4.   ALJ Decision**

As noted above, ALJ Riley  issued his decision on October 3, 2014. (R. 10-20.) He made the following Findings of Fact and Conclusions of Law:

> 1.    The claimant last met the insured status requirement of the Social Security Acton on March 31, 2014.
>
> 2.    The claimant did not engage in substantial gainful activity during the

12

period from his alleged onset date of January 31, 2009, through his date last insured of March 31, 2014 (20 CFR 404.1571 et seq.).

3.   Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, obesity, and depression (20 CFR 404.1520(c)).

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasional climbing stairs, balancing, stooping, kneeling, crouching, and crawling with never climbing ladders.  The work is limited to simple, routine, repetitive tasks.

6.   Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on September 1, 1970 and was 43 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of job skills is not an issue in this case because the

claimant's past relevant work is
unskilled (20 CFR 404.1568).

10. Through the date last insured,
considering the claimant's age,
education, work experience, and residual
functional capacity, there were jobs
that existed in significant numbers in
the national economy that the claimant
could have performed (20 CFR 404.1569
and 404.1569(a)).

11. The claimant was not under a disability,
as defined in the Social Security Act,
at any time from January 31, 2009, the
alleged onset date, through March 31,
2014, the date last insured (20 CFR
404.1520(g)).

(R. 12-19.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to

determine whether a claimant is disabled.[3]  It is necessary for the

---

[3]  "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than 12 months . . . ."  42 U.S.C.
§ 423(d)(1)(A).  The Act further provides that an individual is
disabled

only if his physical or mental impairment or
impairments are of such severity that he is not
only unable to do his previous work but cannot,
considering his age, education, and work
experience, engage in any other kind of
substantial gainful work which exists in the
national economy, regardless of whether such
work exists in the immediate area in which he
lives, or whether a specific job vacancy exists
for him, or whether he would be hired if he
applied for work.

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

---

42 U.S.C. § 423(d)(2)(A).

15

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. 19.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in

> relationship to all the other evidence in the
> record.") (footnote omitted).  The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there

17

is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the

18

ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

### IV. Discussion

Plaintiff asserts that benefits should be awarded or the Acting Commissioner's decision should be remanded for the following reasons: 1) the ALJ erred in his evaluation of Plaintiff's severe impairments; 2) the ALJ erred in his assessment of Plaintiff's credibility and his exertional and non-exertional limitations; and 3) the ALJ did not properly consider favorable and relevant medical and vocational evidence.  (Doc. 12 at 5-6.)

**A.    *Step Two and Step Three Analyses***

Plaintiff's first claimed error relates to ALJ Riley's step two and step three analyses, stating that he did not properly evaluate the allegedly disabling impairments of uncontrolled hypertension, diverticulitis, chronic pain syndrome, and Rocky Mountain spotted fever and did not properly consider wether the Plaintiff's impairments met or equaled the listings.  (Doc. 12 at 7 (citing R. 7-51, 198-449).)  Regarding step two, Defendant maintains that the ALJ's step two analysis is supported by substantial evidence.  (Doc. 13 at 11.)  Alternatively, Defendant asserts that any claimed error would be harmless because the ALJ proceeded beyond step two.  (*Id.* at 15.)  The Court concludes Plaintiff has not shown that this claimed step two error is cause for reversal or remand because, even if credited, the error would

be harmless.

If the sequential evaluation process continues beyond step two, a finding of "nonsevere" regarding a specific impairment at step two may be deemed harmless if the functional limitations associated with the impairment are accounted for in the RFC. *Salles v. Commissioner of Social Security*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (not precedential) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).  In other words, because the outcome of a case depends on the demonstration of functional limitations rather than a diagnosis, where an ALJ identifies at least one severe impairment and ultimately properly characterizes a claimant's symptoms and functional limitations, the failure to identify a condition as severe is deemed harmless error. *Garcia v. Commissioner of Social Security*, 587 F. App'x 367, 370 (9th Cir. 2014) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)); *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006) (not precedential) ("Mere presence of a disease or impairment is not enough[;] a claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity."); *Burnside v. Colvin*, Civ. A. No. 3:13-CV-2554, 2015 WL 268791, at *13 (M.D. Pa. Jan. 21, 2015); *Lambert v. Astrue*, Civ. A. No. 08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009).

Functional limitations that must be accounted for are only

those that are credibly established.  *Rutherford*, 399 F.3d at 554.
Case law and regulations[4] address when a limitation is credibly
established.

> Limitations that are medically supported and
> otherwise uncontroverted in the record, but
> that are not included in the hypothetical
> question posed to the expert, preclude
> reliance on the expert's response (*Burns*, 312
> F.3d at 123).  Relatedly, the ALJ may not
> substitute his or her own expertise to refute
> such record evidence (*Plummer*, 186 F.3d at
> 429).  Limitations that are medically
> supported but are also contradicted by other
> evidence in the record may or may not be
> found credible--the ALJ can choose to credit
> portions of the existing evidence but "cannot
> reject evidence for no reason or for the
> wrong reason" (a principle repeated in *Mason
> v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.
> 1993)[)]; [20 C.F.R. § 416.]929(c)(4)).
> Finally, limitations that are asserted by the
> claimant but lack objective medical support
> may possibly be considered nonetheless
> credible.  In that respect the ALJ can reject
> such limitation if there is conflicting
> evidence in the record, but should not reject
> a claimed symptom that is related to an
> impairment and is consistent with the medical
> record simply because there is no objective
> medical evidence to support it. ([20 C.F.R. §
> 416.](c)(3)).

399 F.3d at 554.

    Given the relevant legal framework, a plaintiff must do more
than point to subjective complaints to show that an ALJ's
determinations regarding limitations are not based on substantial

---

    [4] *Rutherford* specifically identifies 20 C.F.R. §§ 416.945,
929(c) and 927, as relevant to the inquiry.  399 F.3d at 554.

evidence.  Plaintiff, who bears the burden of showing severity at step two and listing level impairment at step three, *see*, *e.g.*, *Bowen v. Yuckert*, 482 U.S. 137, 145 n.5 (1987), has not met his burden here with his broad citation to evidence of record in support of his claimed limitations.  (Doc. 12 at 7, 8 (citing R. 7-51, 198-449).)  In addition to the citation of the *entire* ALJ decision and hearing testimony (R. 7-51) and *all* of the medical evidence (R. 198-449), Plaintiff points to his Function Report (Doc. 12 at 8 (citing R. 138-47)) to support his claimed functional limitations.  In support of his assertion that ALJ Riley mischaracterized medical evidence of record, the only specific citations to record evidence, provided without explanation, are from one visit to Wellspan Orthopedics on January 22, 2013 (R. 232-39), a May 6, 2013, Medical Opinion Re: Ability To Do Work-Related Activities completed by Dr. Winand (R. 242), a July 2, 2013, office visit note from Dr. Winand (R. 243), and a variety of test results dated January 29, 2013, and February 1, 2013 (R. 303-12).  (*See* Doc. 12 at 9.)

At the January 22, 2013, Wellspan Orthopedics visit, certain limitations were found on musculoskeletal physical examination, including gait instability, and x-rays showed some degenerative changes in the lumbar spine.  (R. 232-39.)  Plaintiff does not show error in the ALJ's assessment/consideration of this evidence and the Court finds none.  ALJ Riley found Plaintiff's degenerative

22

disc disease to be severe and incorporated associated credibly established limitations in his RFC.  (R. 12, 14.)  In his decision, he specifically cited other musculoskeletal examinations which were normal and examination notations indicating that Plaintiff had a normal gait and ambulation.  (R. 16 (citing Exs. 1F/4, 15F/9, 19F/9, 24F/3).)  Further, Plaintiff's broad assertions regarding other impairments being severe and other limitations being credible are not supported by this record evidence.

The results of the various tests conducted on January 29, 2013, and February 1, 2013 (R. 303-12), do not support any additional limitations, especially in that the MRI of the lumbar spine showed only "minimal degenerative disc disease, without acute abnormalities" (R. 311) and the cervical spine MRI showed mild degenerative spurring at C5-6 without neural foraminal narrowing, compression of thecal sac or spinal canal stenosis (R. 309).

While Dr. Winand's May 6, 2013, opinion shows greater limitations than those found by ALJ Riley (R. 242), Plaintiff's citation to this evidence does not show step two or step three error in that the RFC analysis explains the limited weight assigned to the opinion.  (R. 17-18.)

Dr. Winand's July 2, 2013, Clinical Summary indicates only that Plaintiff was seen for follow-up of chronic illnesses, that the health issues reviewed were depression, hypertension, and chronic pain syndrome and that Plaintiff was referred to psychiatry

23

for worsening depression.  (R. 243.)  This record referenced by
Plaintiff points to no specific limitations related to the
identified health issues or others.  (*Id.*)

Based on this review of specific evidence cited by Plaintiff,
the Court concludes he has not shown that ALJ Riley was obligated
to find all claimed limitations credibly established.  As discussed
by ALJ Riley, such limitations are not uncontradicted and/or
objectively supported and, therefore, pursuant to *Rutherford*, 399
F.3d at 554, he was able to reject such limitations.  In this
context, even if the Court assumes *arguendo* that there is merit in
Plaintiff's severity argument, Plaintiff has not shown that his
claimed step two error is cause for reversal or remand.

With his very cryptic step three listings argument supported
by citation to all medical evidence, the entire ALJ decision, the
entire hearing transcript, and his Function Report (Doc. 12 at 7-
8), Plaintiff has not met his burden of showing the ALJ erred on
the broad basis alleged.

**B.   *Residual Functional Capacity Assessment***

Plaintiff's assertion that ALJ Riley erred in his credibility
and limitations assessments as well as in his evaluation of Dr.
Winand's opinion (Doc. 12 at 9-12) are all attacks on the ALJ's RFC
assessment.  As with Plaintiff's preceding arguments, citation to
the record is, for the most part, extremely broad and general,
particularly in relation to Plaintiff's credibility.  (*See* Doc. 12

24

at 9-11.)  Thus, rather than properly developed and supported argument, Plaintiff's approach renders his assertions merely conclusory.  As it is not the Court's responsibility to comb through the record seeking the factual underpinnings of a plaintiff's claims, particularly where the plaintiff is represented by counsel, further discussion of such broad brush claims is not warranted.

Plaintiff's assertion that ALJ Riley did not give proper weight to the opinions of the treating physician is accompanied by more specific citation to the record insofar as Plaintiff contends the ALJ's focus on Dr. Winand's comment regarding malingering was improper.  (Doc. 12 at 12 (citing R. 242, 328-32).)  Therefore, review of this aspect of Plaintiff's claimed error is appropriate. Defendant maintains that substantial evidence supports the ALJ's evaluation of Dr. Winand's opinion.  (Doc. 13 at 25.)  The Court concludes Plaintiff has not shown that this claimed error is cause for reversal or remand.

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight.  *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).  Sometimes called the "treating physician rule," the principle is codified at 20 C.F.R. 404.1527(c)(2), and is widely

accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).[5]  "A cardinal principle

---

[5] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we

guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); see also *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

ALJ Riley set out the following rationale:

> The undersigned gives little weight to the opinion because it appears to rely on the subjective reporting of the claimant, which the undersigned found not fully credible, and is inconsistent with the medical record. Specifically, the objective observations and examination findings found generally mild to no more than moderate difficulties.  The claimant had normal strength with mild decrease in range of motion and normal gait with occasional abnormality.  The radiographic studies found no more than minimal degenerative changes, and the claimant received routine and conservative

---

give your treating source's opinion.

> care.  Additionally, the undersigned gives
> little weight to the assessments because Dr.
> Winand hand wrote "unknown" to the yes/no
> question of, "Is [the claimant] a
> malingerer?" (Exhibits 21F/1 and 22F/1),
> which affects the basis of the opinion.
> Moreover, Dr. Winand's opinion appears to
> rest at least in part on an assessment of
> orthopedic impairments outside the doctor's
> area of expertise, which is internal
> medicine.

(R. 51-52.)

ALJ Riley's review of Dr. Winand's opinion may not be a model
of thoroughness when considered in isolation.  (R. 17-18.)
However, in the circumstances and context presented, the Court
concludes Plaintiff has not shown error requiring reversal or
remand.  While ALJ Riley did not cite to specific inconsistent
evidence or radiographic studies in his opinion analysis (R. 17-
18), he reviewed and explained the varied findings in the medical
evidence (R. 15-16).  "[G]enerally mild to no more than moderate
difficulties[,] near normal strength with mild decrease in range of
motion and normal gait with occasional abnormality" are all
findings specifically cited in ALJ Riley's review of evidence in
the RFC portions of his decision.  (R. 16 (citing Exs. 1F/4, 5F,
5F/3, 5F/5-8, 15F/9, 26F, 24F/3 and 27F/7).)  Similarly,
radiographic studies generally referenced in the opinion analysis
(R. 18) are specifically reviewed and cited within the RFC
analysis.  (R. 16 (citing (Exs. 4F/22, 5F/8, 13F/5, 13F/7-8, 16F/3,
16F/8-9, 16F/9-10, 17F/3, 17F/7-8, 17F/8, 17F/10, 18F/5-6, 18F/7-8,

19F/5-6, 19F/7-8).)

Plaintiff does not assert that ALJ Riley misrepresented the evidence specifically cited in the RFC portion of his decision.[6] Rather, he generally maintains without citation that Dr. Winand's opinions "were consistent with his actual course of care" and the ALJ assigned little weight to Dr. Winand's opinions "without proper justification."  (Doc. 12 at 11.)

As previously noted, Plaintiff's only assertion accompanied by specific citation to the record involves the alleged impropriety of the ALJ's reliance on Dr. Winand's statement that it was "unknown" whether Plaintiff was a malingerer.  (Doc. 12 at 12 (citing R. 242, 328-32).)  Plaintiff contends the ALJ should have reconciled this opinion directly with Dr. Winand or with another opinion from a consultative examiner.  (Doc. 12 at 12.)

In certain circumstances, the duty to develop the record may entail a duty to recontact a medical source to obtain additional information, such as when the source's report "contains a conflict or ambiguity that must be resolved," "does not contain all the necessary information, or does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques."  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing 20

---

[6] Plaintiff generally states in an earlier section of his brief that medical evidence "was not accurately reported by ALJ Riley" (Doc. 12 at 9) but, as discussed previously in the text, this type of broad-brush assertion is merely unsupported conclusion rather than valid criticism.

C.F.R. § 416.912(e)(1) and 20 C.F.R. § 404.1512(e)(1)).  It is the *inadequacy* of the record that triggers the duty.  529 F.3d at 205.

The Court finds the ALJ was under no such obligation here because it is clear that after treating Plaintiff for over two years Dr. Winand was unable to determine whether Plaintiff was a malingerer and no evidence suggests that recontacting him would provide clarity.[7]  Further, in that Dr. Winand, the treating physician, expressed that he did not know whether Plaintiff was a malingerer, the ALJ was entitled to consider the comment and no evidence suggests that a one-time consultative examination or further review would negate it.[8]

---

[7] Though not cited by the ALJ and, therefore, not a basis for the Court's conclusion, *see, e.g., Gross v. Comm'r of Soc. Sec.*, No. 15-2764, ---Fed. App'x---, 2016 WL 3553259, at *4 (3d Cir. June 30, 2016) (court should not supply reasoned basis for ALJ's decision that ALJ has not given), our determination is bolstered by the fact that, in Dr. Winand's December 3, 2013, opinion, he answered "no" to the question of whether his patient's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation.  (R. 329.)  He explained that "MRI of the lumbar spine showed only minimal degenerative disc disease."  (*Id.*)

[8] Plaintiff does not develop an argument that this is a case where a consultative examination should have been ordered pursuant to the ALJ's duty to develop the record, a duty that does not necessarily come into play where "there was sufficient evidence in the medical records for the ALJ to make her decision."  *Moody v. Barnhart*, 114 F. App'x 495, 501 (3d Cir. 2004) (not precedential); *see also Griffin v. Commissioner of Social Security*, 303 F. App'x 886, 890 n.5 (3d Cir. 2009) (not precedential).  If the record is inadequate for proper evaluation of the evidence, the ALJ's duty to develop the record is triggered.  *See, e.g., Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Without more, there is no reason to find the duty was triggered here.

Plaintiff has not shown the ALJ erred in his assessment of Dr. Winand's opinion on the specific bases alleged and has not shown that the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence," such that it would be entitled to controlling weight, 20 C.F.R. § 404.1527(c)(2). Therefore, this claimed error is not cause for reversal or remand.

## C. *Vocational Evidence*

Plaintiff's final claimed error is that the first two hypothetical questions posed to the VE did not accurately reflect Plaintiff's limitations and the ALJ improperly did not credit the third hypothetical question which posed limitations similar to those found by Dr. Winand. (Doc. 12 at 14.) Plaintiff relies on his previous arguments that ALJ Riley did not give proper weight and credit to the significant medical/vocational evidence in the case and did not properly assess Plaintiff's RFC.[9] (*Id.*) Because

---

Plaintiff's related inference that ALJ Riley's failure to give clear weight to any other medical opinion renders his RFC error (Doc. 12 at 12) is not cause for reversal or remand. This Court has found no such requirement within this Circuit. *See, e.g., Nirka v. Colvin*, No. 3:15-CV-2409, 2016 WL 3077359, at *13 (M.D. Pa. June 1, 2016) (citations omitted).

[9] Plaintiff specifically refers to his "prior history of paralysis due to a tick bite and Rocky Mountain spotted fever, resulting in his inability to ambulate effectively, his interference with concentration and completing tasks due to pain and other factors relative to his impairments, etc." (Doc. 12 at 14.) The record review set out in the text shows that only

the Court has determined that Plaintiff has not shown that these claimed errors are cause for reversal or remand, this claimed error also fails.

## V. Conclusion

For the reasons discussed above, Plaintiff's appeal of the Acting Commissioner's denial of benefits (Doc. 1) is denied.  An appropriate Order is filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: September 14, 2016

---

Plaintiff himself attributed symptoms to Rocky Mountain spotted fever which he had at the age of ten.  (*See*, *e.g.*, R. 199, 246-47.) Born on September 1, 1970, Plaintiff was thirty-eight on the alleged disability onset date and had a work history which included floor technician and palletizer.  (R. 18.)  Thus, Plaintiff had worked for many years with the symptoms allegedly associated with Rocky Mountain spotted fever, including diffuse pain which he said in October 2012 had been chronic "for the past 30 years."  (R. 199.)  It is noteworthy that gait problems referenced frequently by Plaintiff were noted on examination on only one occasion (R. 233), and the claimed chronic nature of the problem is contradicted by normal gait findings on most physical examinations (*see*, *e.g.*, R. 201 272, 346).  Furthermore, in identifying applicable "positive objective signs" from the list provided in the December 3, 2013, form opinion, Dr. Winand did not check "abnormal gait."  (R. 329.)